UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re
Tyson James Lewis,
        Debtor.

Chapter 7
Case No. 14-27565-svk

Neil Schmeckpeper, et al.,
        Plaintiffs,
v.

Tyson James Lewis,
        Defendant.

Adversary Case No. 14-2478

## MEMORANDUM DECISION

This case involves the tragic shooting death of 17-year-old Douglas Schmeckpeper ("Douglas") by Tyson Lewis (the "Debtor"). The Debtor claimed he did not know the gun was loaded, and the shooting was an accident. He pled guilty to second degree reckless homicide and served fifteen years in prison. In 2001, while the Debtor was incarcerated, Douglas's parents, Neil and Stella Schmeckpeper (the "Plaintiffs") obtained a wrongful death judgment against him. When the Debtor filed bankruptcy, the Plaintiffs filed a complaint to except the judgment debt from discharge as a willful and malicious injury under 11 U.S.C. § 523(a)(6).

The Court held a trial on March 18, 2015, at which the Debtor and several other witnesses testified.[1] Prior to the trial, the parties stipulated to the authenticity of certain uncertified official documents and public records. (Docket No. 54.) The exhibits that were admitted and discussed at the trial included the Debtor's guilty plea questionnaire (Plaintiffs' Exhibit 1001; Docket No. 28), the transcript of the guilty plea proceedings (Plaintiffs' Exhibit

---

[1] In addition to the Debtor, Jose Antonio Sanchez, Michael Dubis, Thomas Wagner, and Jamie Grabowski testified at the trial. Neil and Stella Schmeckpeper were present in court but did not testify.

1002; Docket No. 29), the transcript of the sentencing proceedings (Plaintiffs' Exhibit 1004; Docket No. 31), and the criminal complaint (Plaintiffs' Exhibit 1015; Docket No. 13 at 4-6).[2] After considering the evidence, the Court issued a preliminary ruling that the Plaintiffs had not met their burden of proof. This memorandum decision memorializes the Court's decision and constitutes the Court's findings of fact and conclusions of law.

Under 11 U.S.C. § 523(a)(6), a debtor's discharge does not include any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." The United States Supreme Court defined "willful" in *Kawaauhau v. Geiger*, 523 U.S. 57 (1998). Under the Court's definition, the debtor must either desire to cause the consequences of his act, or believe that the consequences are substantially certain to result from it:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury.' Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the consequences of an act," not simply "the act itself."

*Id.* at 61-62. In *Geiger,* the Court emphasized that reckless conduct is not intentional conduct, and does not qualify as "willful" under § 523(a)(6). *Id.* at 64.

The Seventh Circuit Court of Appeals recently construed the meaning of "willful" in *Gerard v. Gerard*, No. 14-1496, 2015 U.S. App. LEXIS 3929 (7th Cir. Mar. 12, 2015). Quoting its prior decision in *First Weber Group, Inc. v. Horsfall*, 738 F.3d 767 (7th Cir. 2013), the court stated, "[w]illfulness requires a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. . . . [i]t can be found either if the debtor's motive was to

---

[2] Other exhibits were stipulated as authentic, but were not introduced into evidence.

inflict the injury, or the debtor's act was substantially certain to result in injury." *Gerard*, 2015 U.S. App. LEXIS 3929, at *10 (internal quotations and citations omitted). According to the court of appeals, "one must act with the specific intent to cause a certain result in order to prove willfulness." *Id.* at *12.

At the trial, the Debtor testified that he did not intend to shoot, injure or kill Douglas. (Debtor Testimony 12:23:13.) At the time of the shooting the Debtor was 17 years old, and he and Douglas were close friends. He testified that he could not recall where he obtained the gun, but he got it for personal protection. (*Id.* at 10:06:59.) On January 21, 1999, the day of the shooting, the Debtor and Douglas were in the basement of Douglas's home. The Debtor testified that he removed the gun from his pocket and was "waving it around" and "playing with it." (*Id.* at 12:20:02-12:21:30.) The Debtor believed that the gun was unloaded because he had opened the cylinder earlier that day (he could not recall when he had done so), turned the gun upside down and emptied the bullets into his pocket. (*Id*. at 10:16:23.) The Debtor testified that at one point he pulled back the hammer of the gun, put it to his own head, and pulled the trigger. (*Id.* at 10:22:50; 12:21:24.)

Although the Debtor did not remember putting his finger on the trigger again (*Id.* at 10:24:50), while the Debtor was waving the gun around it fired, striking Douglas. (*Id*. at 10:22:52-10:23:21; 12:21:45.) Douglas died as a result of his injuries. The Debtor stated that he was scared, and he fled the scene after waking Douglas's mother to inform her that he had been shot. At first he blamed someone else for the shooting, but two days later, he voluntarily turned himself in to police with his attorney. (*Id.* at 10:28:40-10:42:39.) He was charged with second degree reckless homicide while armed with a dangerous weapon. (Docket No. 13 at 4-6). The Debtor testified that on the advice of his attorney, he chose to plead guilty rather than invoking his right to argue that the shooting was an accident. (Debtor Testimony 10:51:54.)

3

Jose Antonio Sanchez testified for the Plaintiffs, recounting an incident when the Debtor had brandished a gun in public. (Sanchez Testimony 9:58:08.) He explained that he witnessed the Debtor loading a gun at the Debtor's home and, on one occasion, pointing a gun at him and Douglas on the street. Mr. Sanchez also testified that the Debtor informed him that he always kept the gun loaded. (*Id.* at 10:02:10.) The Debtor testified that he had carried the gun with him in public on occasion, but he denied always keeping the gun loaded or loading the gun in front of Mr. Sanchez. (Debtor Testimony 12:25:00-12:25:16.) The Debtor testified credibly that Mr. Sanchez had never been at the Debtor's home. (*Id.* at 10:14:00.) He also disputed that he pointed the gun at Mr. Sanchez at any time. (*Id.* at 12:30:01-12:30:35.)

One of the investigating police officers, Michael Dubis, testified about the investigation into Douglas's death. Officer Dubis provided background information on the type of gun the Debtor used, and he stated that some pressure had to be placed on the trigger in order to discharge the gun. (Dubis Testimony 11:26:33-11:26:53.) Officer Dubis also explained the proper method for unloading bullets from the gun, and he stated that unless the gun is turned completely straight up and down, it is common for one or more bullets to catch on the cylinder release and remain in the gun. (*Id.* at 11:23:48-11:24:17.)

As part of his testimony, the Plaintiffs offered Officer Dubis's police report into evidence. (Plaintiffs' Exhibit 1006; Docket No. 66 at 69-70.) They attempted to introduce statements made by Jamie Grabowski to Officer Dubis the day after the shooting. Ms. Grabowski told Detective Dubis that the Debtor told her that he had shot Douglas. (*Id.*) Ms. Grabowski informed Officer Dubis that the Debtor

> [t]old her that it was an accident, that they were playing Russian Roulette. He told her that he had emptied the cartridges out of the cylinder and he had put one cartridge back into the cylinder, spun the cylinder and closed the gun. She stated that he told her that he looked at the cylinder and saw that the cartridge was off to the side, and not underneath the hammer. At that point he put the gun up to his

4

head and pulled the trigger, the gun did not fire. She stated that he then looked at
the gun a second time and saw the cartridge was off to the side of the hammer again.
He pointed the gun at his friend Douglas and pulled the trigger. This time the gun
went off, striking Douglas below the left eye.

(*Id*.) The Debtor's attorney objected to the introduction of Ms. Grabowski's account to Officer Dubis, arguing that the statements were inadmissible hearsay. *See* Fed. R. Evid. 801(c) ("'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.").

The Plaintiffs called Ms. Grabowski as a witness but she could not confirm the information she had given to Officer Dubis. She testified that she did not recall speaking to the Debtor or the police about the shooting. (Grabowski Testimony, 1:24:00-1:28:51.) Even when shown the police report to refresh her recollection, Ms. Grabowski could not remember these traumatic events. (*Id.* at 1:31:43.)

Ms. Grabowski's statements to Officer Dubis are classic examples of hearsay. At the trial, the Court analyzed whether one or more hearsay exceptions might apply. First, given Ms. Grabowski's present inability to remember the incident, her statements arguably could be admissible as a past-recorded recollection. *See* Fed. R. Evid. 803(5). This hearsay exception applies to a record that:

> (A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately;
> (B) was made or adopted by the witness when the matter was fresh in the witness's memory; and
> (C) accurately reflects the witness's knowledge.

*Id.* Importantly, Rule 803(5) requires that the memorandum or record must have been "made or adopted by the witness." As the court noted in *United States v. Williams*, 571 F.2d 344, 348 (6th Cir. 1978), "[a]s proposed by the Supreme Court, Rule 803(5) provided only for reading into

5

evidence a <u>memorandum or record shown to have been made by the witness</u>. The House of Representatives amended the rule to add 'or adopted by the witness.'" (emphasis added). In *Williams*, the court found the statement made to a secret service agent admissible because the witness had signed and sworn to the statement, thereby adopting it. *Id.*

Here, Ms. Grabowski did not sign, swear to or otherwise adopt the statement. The police report was prepared by Officer Dubis, and it was not a verbatim recollection of Ms. Grabowski's interview. *See In re Acceptance Ins. Cos., Sec. Litig.*, 352 F. Supp. 2d 940 (D. Neb. 2004) ("The hearsay exception of past-recorded recollection under Fed. R. Evid. 803(5) applies only when the record is made or adopted by the witness. Where the documents were not reported verbatim and were unsigned and unsworn by declarant, they constituted inadmissible hearsay.") Thus, Ms. Grabowski's statements in the police report do not satisfy the hearsay exception under Rule 803(5).

The Plaintiffs suggested that the police report could be admitted under Rule 803(6), the business records exception. That exception applies to admit records if:

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.'

Fed. R. Evid. 803(6). However, where the individual supplying the information is not acting in the regular course, then the chain has been broken. *United States v. Patrick*, 248 F.3d 11, 22 (1st Cir. 2001) (statements made by informants in police notes were inadmissible because informants are not "part of the business of police."); Fed. R. Evid. 803(6) advisory committee's note ("An

6

illustration is the police report incorporating information obtained from a bystander: the officer qualifies as acting in the regular course but the informant does not."). In this case, Ms. Grabowski was the bystander or witness supplying the information to the police officer, and she was not acting in the regular course of her business when making a statement to Officer Dubis. Accordingly, Ms. Grabowski's statements contained in the police report do not fall within the business records exception.

The police report also might qualify as a public record, but the public-records exception does not apply to admit Ms. Grabowski's statements within the report. Rule 803(8) excludes from the rule against hearsay:

> A record or statement of a public office if:
>   (A) it sets out:
>     (i) the office's activities;
>     (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
>     (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
>   (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

The public-records exception to hearsay is justified based on the assumption that public officials will perform their duties properly and without bias. *See United States v. De La Cruz*, 469 F.3d 1064, 1069 (7th Cir. 2006). However, "third-party statements contained in a police report do not become admissible for their truth by virtue of their presence in a public record and instead must have an independent basis for admissibility." *Jordan v. Binns*, 712 F.3d 1123, 1133 (7th Cir. 2013) (collecting cases); *see also Avery v. City of Milwaukee*, No. 11-C-408, 2015 U.S. Dist. LEXIS 6108, at *11 (E.D. Wis. Jan. 20, 2015) ("Police reports are generally excluded as hearsay except to the 'extent to which they incorporate firsthand observations of the officer. This is because the presumption of reliability that serves as the premise for the public-records exception does not attach to third parties who themselves have no public duty to report.'"). Here, the

7

Plaintiffs attempted to introduce Ms. Grabowski's statements about the Russian Roulette game, not Officer Dubis's impressions from the police report. But Ms. Grabowski's third-party statements are not cloaked with admissibility simply because they are in the police report. In summary, Ms. Grabowski's statements to Officer Dubis as set forth in the police report are hearsay and not covered by any applicable exception.

Even assuming that Ms. Grabowski's statements to Officer Dubis could be considered by the Court, her statements were not supported by any other evidence presented in the case. No additional testimony or documents corroborated Ms. Grabowski's allegations about a Russian Roulette game or the Debtor purposely loading one bullet into the gun. The Debtor's recitation of the events both during his sentencing hearing and at the trial in this Court directly contradict her statements. Moreover, the statement itself does not categorically support the inference that the Debtor intended to shoot and injure Douglas. Ms. Grabowski told Officer Dubis that the Debtor told her the shooting was an accident, and that he checked that the cartridge was off to the side before pointing the gun at Douglas. (Docket No. 66 at 70.) In light of Ms. Grabowski's inability to confirm her prior statements and the evidence to the contrary, her statements in the police report, even if admissible, do not reach the burden of proof necessary for the Plaintiffs to prove that the Debtor intended to shoot Douglas.

After considering the evidence and the credibility of the witnesses, the Court concludes that the Debtor did not act with the specific intent to injure Douglas. Because he did not think the gun was loaded, the Debtor could not have believed that waving the gun was substantially certain to injure Douglas. Although his conduct was unacceptably reckless with tragic consequences, even gross recklessness does not qualify as a willful injury. *See Geiger*, 523 U.S. at 64. Other courts applying the *Geiger* definition of willfulness in cases involving the negligent use of firearms have reached the same conclusion.

8

For example, in *Corley v. Delaney (In re Delaney)*, 97 F.3d 800 (5th Cir. 1996), the court of appeals considered a case in which, "in anticipation of a confrontation and possible fight," a teenager named Delaney loaded a double-barreled shotgun and confronted a "sometimes-friend" named Corley, while Corley was seated in the passenger seat of a car. *Id.* at 801-02. When Delaney tapped the gun on the windshield, the gun discharged, injuring Corley. Delaney said that the gun went off by accident, and the court did not find his conduct "willful." The court of appeals explained that while Delaney acted intentionally in loading the shotgun and tapping it on the window to get Corley's attention, the firing of the gun was neither deliberate nor intentional, and Delaney did not intend Corley's injury. "Thus the injury was not 'willful and malicious' on the part of Delaney: He neither intended the injury nor intentionally took action that was 'substantially certain' to cause the injuries that Corley suffered. Consequently, as ultimately held by both the bankruptcy court and the district court, the negligence judgment debt was and remains dischargeable in bankruptcy." *Id.* at 803.

In this case, the Debtor's conduct is arguably less reckless than Delaney's. The Debtor thought the gun was unloaded and waved it around, while the debtor in *Delaney* brought a loaded shotgun to confront Corley. Importantly, neither the Debtor nor Delaney acted with the requisite intent to injure their victims. Therefore the result here must be the same as *Delaney*.

The Debtor's brazen disregard for the dangers inherent in handling a gun does not establish willful intent. Although he waved the gun around and allegedly brandished it in public, simply brandishing a gun does not establish willfulness under § 523(a)(6). *See Maxwell v. Price (In re Price)*, 264 B.R. 8, 12 (Bankr. E.D. Ark. 2001) ("While it is true that the Debtor brandished a loaded gun, fired shots in the air, and actually fired at the truck's tire, these facts do not necessarily lead to the conclusion that the Debtor meant to shoot Maxwell. . . . brandishing a

9

weapon is not the type of conduct that is certain or substantially certain to cause the injury Maxwell suffered.").

By contrast, in *Drewes v. Levin (In re Levin)*, 434 B.R. 910 (Bankr. S.D. Fla. 2010), the debtor shot a teenager who was playing "ding-dong-ditch." The court concluded that the shooting was willful under § 523(a)(6) because "[t]he Debtor is an adult. He owned a handgun. He took the time to retrieve the handgun and bring it to his front door. He opened the door and saw Mark Drewes. Mark Drewes was within three feet of the Debtor and the Debtor believed Mark Drewes was getting closer. The Debtor shot his handgun to repel Mark Drewes." *Id*. at 923.

In *In re White*, 18 B.R. 246, 248 (Bankr. E.D. Va. 1982), the debtor obtained a gun with the intent of scaring Tipton. The debtor testified that he drew the gun when Tipton insulted the debtor's mother, but he claimed he did not intentionally fire the gun. The debtor said that he tripped over a rock, and the gun accidentally fired and struck Davis. The bankruptcy court did not believe the debtor's testimony and found his conduct in firing the gun was willful: "[The debtor] clearly intended to shoot Tipton; however, he missed and the bullet hit Davis instead." *Id*.

Unlike in *Levin*, where the debtor intended to shoot the gun to repel a perceived intruder, the Debtor consistently testified in this Court and at his sentencing hearing that he did not intend to shoot Douglas. (Debtor Testimony 12:23:13; Plaintiffs' Exhibit 1004; Docket No. 31 at 45-51.) And unlike in *White*, the Debtor's testimony that the shooting was accidental was credible. He thought he had emptied the cartridges, and the gun was not loaded. He and Douglas were close friends, and there is no evidence that the Debtor wanted to hurt him. The Plaintiffs have not shown that the Debtor intended to injure Douglas or that he acted with substantial certainty that his actions would injure Douglas. Therefore, they have not carried their burden of proof that

10

their judgment should be excepted from the Debtor's discharge as a willful and malicious injury.

An order will be entered denying the relief requested in the complaint.

Dated: March 25, 2015

By the Court:

/s/ Susan Kelley
Susan V. Kelley
Chief U.S. Bankruptcy Judge
